DERN et al. v. HOLDEN, State Auditor.

No. 4573.   Decided May 3, 1927.   (256 P. 537.)

*W. Hal. Farr*, Asst. Atty. Gen., for plaintiffs.

Same counsel for respondent.

STRAUP, J.

When Utah was admitted into the Union the government of the United States granted to it various lands in the state for educational purposes, including grants for common schools, the university, the agricultural and other colleges, the deaf and dumb and insane asylums, and other institutions, in all about eleven in number. The grants provided

that the lands should be held by the state exclusively for such purposes and when sold that the proceeds of sales should constitute a permanent fund to be safely invested and only the interest and income thereof used and expended for the purposes for which the grants were made. By the adoption of its Constitution the state accepted the grants and provided that the lands should be held by the state and the proceeds of sales thereof invested and the interest and income therefrom used and applied as in the grants specified. By legislative enactment, the state created what is called the state land board, consisting of the Governor of the state, the secretary of state, and the Attorney General, and gave it the direction, management, and control of all of such lands, with power to sell and lease them for the best interests of the state and in accordance with the grants and with the Constitution. On the first business day of each month the board is required to pay into the state treasury all moneys received by it during the previous month, classified as to sales, leases, rentals, interest, fees, penalties, and forfeitures. The proceeds and moneys derived from the sale or lease of lands granted for the use and benefit of the particular institution are credited to such institution, and are separately invested for its use and benefit, and the interest, rentals, royalties, etc., derived therefrom are also separately credited to each institution. The principal of the permanent fund cannot be used for maintenance of the respective institutions, nor may it otherwise lawfully be expended and disbursed for any purpose, or used in any manner except to safely invest it. The interest derived from the investments, together with all moneys received from rentals, etc., may under the direction of the state board of examiners, not the state land board, be used for the maintenance of common schools or of the respective state institutions. We do not find any statutory or other provision permitting any of such interest, rentals, royalties, or fees to be used for the maintenance of the state land board. The act creating the land board and prescribing its duties and powers also provides

that all necessary expenses attending the examination, survey, location, selection, appraisement and the sale of such lands, the purchase of blanks, books, and stationery, the compensation of officers, and all expenses necessarily incurred in carrying out the provisions of the act creating the land board shall be paid by the state treasurer from the fund appropriated for that purpose, on the warrants of the auditor issued on vouchers certified to by the land board or its secretary.

Prior to 1927, the Legislature, to meet and pay such compensation of officers and expenses of the land board, made appropriations therefor to be paid out of the general fund of the state, in the same manner as for the payment of compensation, salaries, and expenses of all state officers and departments of the state. But for the years 1927 and 1928, the Legislature, in making its appropriation for the payment of compensation of officers and expenses of the land board, directed and provided that the amount of money so appropriated for such purpose should "be charged against and paid from interest, fees, rental, etc., received by the board and heretofore credited to the various institutions, schools, and general fund." The land board presented to the state board of examiners claims for compensation and salaries of officers and agents of the land board and for expenses necessarily incurred in and incident to the operation of the land board, which claims were approved by the state board of examiners. Thereupon the claims so approved were presented to the state auditor and a demand made on him that he issue and draw warrants against the appropriation so made and to be paid, not out of the general fund of the state, but out of the interest, fees, rentals, etc., received by the board and credited to the various institutions schools, and general fund. That the auditor refused to do; hence the Attorney General, on behalf of the land board, has applied to this court for a writ of mandamus directing the auditor to so issue the warrants. The auditor in person filed a general demurrer to the petition for the writ. On

the hearing thereof the Attorney General appeared and filed a brief in support of his petition. The auditor neither in person nor by counsel made any further appearance or filed any brief. We are not advised on what ground the auditor refused to issue the warrants except as alleged in the petition for the writ that the auditor claims that the provision of the appropriation act requiring the salaries of officers and expenses of the land board to be charged to and paid out of the funds as by the act provided is unauthorized and void. That, as we are informed by the Attorney General, is based on the theory that, since the proceeds derived by the land board from sales and leases of the lands granted to the state for the specific purpose indicated constitutes a permanent fund, and may not itself be used to pay salaries of officers or expenses of the land board, and may not otherwise be used except to safely invest it, neither may the interest, rentals, royalties, etc., derived from investments of such permanent fund be used or applied to pay such salaries or expenses of the land board without infringing upon the provisions of the government grants and of the state Constitution in such particular.

Because of further views entertained by us it is not necessary now to determine whether the state by proper legislative enactment may or may not provide that the salaries of officers and expenses of the land board may be paid from interest, rentals, fees, royalties, etc., derived by it from investments of the permanent fund. It is enough to know that no such legislation has as yet been had. So far as any on the subject goes, it implies that such salaries and expenses are to be paid out of the general fund of the state and as they so have been paid since statehood. Without any further or different legislation on the subject and no legislative enactment that such salaries and expenses of the land board may be paid out of interest, fees, rentals, or royalties by it derived from investments of the permanent fund and credited to the various institutions and schools entitled thereto, the Legislature made an appropriation to

be paid out of a particular and special fund when there is no law authorizing appropriations to be so paid.

Still further as to this. As has been seen, certain lands or acreage was granted for educational purposes for each of the various institutions and common schools of the state. The proceeds of sales and leases are held ■ as a separate permanent fund for each and as such are separately invested for each, and the interest, rentals, royalties, etc., derived from each investment separately credited to the respective institution or common schools. While the act provides that the appropriation made for the land board shall "be charged against and paid from interest, fees, rental, etc., received by the board and theretofore credited to the various institutions, schools, and general fund," yet in no particular does the act indicate on what basis the amounts appropriated to the land board shall be charged or paid from interest, fees, rentals, etc., received and credited to each of the various institutions, schools, or general fund, or upon what basis or in what manner the apportionment shall be made. That is to say, there is not anything to indicate how much of the amount or amounts appropriated to the land board shall be charged to and paid out of interest, fees, rentals, etc., credited to the common schools, or to the university or to the agricultural college or the insane or deaf and dumb asylums or to any of the other institutions or to the general fund. Nor is it in any particular indicated on what bases such apportionment may be determined or who is to ascertain and determine it. There thus is not anything to indicate how much of the demanded warrants shall be drawn on the fund of one institution and how much on any other or others or on the general fund. Neither the land board nor the board of examiners indicated that. The land board but demanded that the auditor draw warrants to pay the salaries and expenses of the land board to be drawn on and paid out of such funds credited to the various institutions, schools, and general fund without indicating the amount of warrants to be drawn on the funds of the

one or the other of such institutions. Nor is there any duty imposed on either the land board or the board of examiners or on the auditor or on any one to make such or any apportionment or designation. Whatever apportionment might be made by the auditor may or may not meet the approval of the land board or of the respective institutions whose funds are thus charged and diminished. What one may regard a just and an equitable apportionment, the other or others may regard improper and unjust. Nor is there any basis by which it may be determined when the one is authorized and the other not. The act in such respect is so incomplete, indefinite, and uncertain as to render that portion of it inoperative and incapable of execution, and to that extent and for that reason must be held invalid.

The writ is therefore denied.

THURMAN, C. J., and CHERRY, HANSEN, and GIDEON, JJ., concur.